IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 02-cv-2464-WDM-CBS

MICHAEL JOHNSON

      Plaintiff,

v.

SCHOOL DISTRICT #1, CITY AND COUNTY OF DENVER,

      Defendant.

---

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on Defendant's Motion for Summary Judgment, filed

October 25, 2004.  I have reviewed the parties' written arguments and tendered

evidence and conclude oral argument is not required.  For the reasons stated below,

the motion will be denied.

### Background

Plaintiff Michael Johnson (Johnson) brought this suit asserting claims under

the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), based on various

allegations of deficiencies in the educational programs and services provided for him.

At this point, I have dismissed all of his claims with the exception of his claim for

damages for physical injuries under Section 504.  Defendant School District #1, City

and County of Denver (the District) moves for dismissal of this claim pursuant to Fed.

R. Civ. P. 56.

The relevant facts are as follows.  In 1987, when he was six months old,

Johnson was diagnosed with a seizure disorder.  By the time he was three, he began

experiencing grand mal seizures, which may manifest themselves with symptoms of

physical shaking, kicking, tongue biting, loss of bladder control, falling down,

combativeness, and confusion.

In the fall of 1998, Johnson enrolled for sixth grade in the Martin Luther King

Middle School (MLK), a school within the District.  That year, Johnson had at least one

grand mal seizure while at MLK but sustained no injury.  During the summer of 1999,

he began experiencing drop seizures, during which he drops to the floor without

notice.  However, Johnson testified at his deposition that he is clumsy and

sometimes falls even when he is not having a seizure.  Further, he does not always

know when he has had a seizure.

At any rate, before Michael began seventh grade at MLK, Johnson's mother,

Gertrude McQueen-Touchton (Touchton), met with all of his teachers and told them

that Johnson had started having drop seizures over the summer and needed to be

watched closely.  Touchton also met with Assistant Principal Shirley Scott and special

education teacher Deborah Carney to discuss her medical concerns about Johnson.

As a result of the meeting, Shirley and Scott drafted an addendum to Johnson's

Individualized Education Plan (IEP) implementing a modified class schedule for Johnson, and implementing a "buddy" system, under which one of his classmates was designated to assist him in his transition between classes and accompany him downstairs to lunch.  There were discussions regarding Johnson's using the elevator instead of the stairs, but he never used the elevator.

During the first two months of the 1999-2000 school year, Johnson did not experience any drop seizures at MLK.[1]  On November 5, 1999, Carney, who taught at least one of Johnson's classes, took a day off.  She left the substitute, Martha Lymna, specific instructions, including one that no passes be given except in an emergency; however, her instructions provided no direction specifically with regards to Johnson. (*See* Def.'s Ex. C(2).)  After lunch that day, Johnson went to his class which was being supervised by Lymna.  He asked Lymna if he could get his notebook, which he believed he had left downstairs, and asked that someone accompany him because he had been having seizures lately.  Lymna denied his request for a companion and told him to go get his notebook or she would give him an "F."

Although Johnson was scared to go down the stairs, he decided to go by himself and not ask for any assistance from anyone in the second floor office located across the stairs.  When approaching the stairs, he fell over the railing on the "bridge" or landing right before the stairs.  He landed on his back and remained immobile until

---

[1]Johnson denies this assertion in his response to the motion for summary judgment, but admitted it in his response to the District's interrogatories.

the paramedics arrived.  He was taken to the hospital and diagnosed with a broken

left wrist.  He does not know how he fell over the railing, but he thinks he suffered a

seizure.  (Johnson Dep., at 60.)

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56.  The nonmoving party must set forth facts showing that there is a genuine

issue for trial.  The court views the record in the light most favorable to the party

opposing the summary judgment motion.  *Cummings v. Norton* , 393 F.3d 1186, 1189

(10th Cir. 2005).  A factual issue is genuine if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,* 477

U.S. 242, 248 (1986).

## Discussion

The District argues that Johnson's claim under Section 504 must be

dismissed because (1) he cannot show bad faith or gross misjudgment; and (2) he

cannot establish that his disability caused his injury.

Section 504(a) provides in relevant part that "[n]o otherwise qualified individual

with a disability . . .shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  To

demonstrate a prima facie case under Section 504, a plaintiff must demonstrate that:

(1) he is handicapped under the Act; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff.  *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999).

Two courts of appeals have also required a showing of bad faith or gross misjudgment under circumstances such as those in this case. *M.P. ex rel. K. v. Ind. Sch. Dist. No. 721*, 326 F.3d 975, 982 (8th Cir. 2003) (internal quotation omitted) (student alleging district failed to address harassment based on his schizophrenia must show "either bad faith or gross misjudgment . . before a Section 504 violation can be made out"); *Bradley v. Arkansas Dept. of Educ.*, 301 F.3d 952, 956 (8th Cir. 2002) ("[i]In order to state any claim against a state school official under § 504, the [plaintiff] must show that the official acted in bad faith or with gross misjudgment"); *Sellers v. Sch. Bd. of City of Mannassas*, 141 F.3d 524, 529 (4th Cir. 1998) (*citing Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982) ("We agree with those courts that hold that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children").  This standard has been defined as precluding liability "[s]o long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals."  *Monahan*, 687 F.2d at 1171.

The Tenth Circuit has not addressed this issue.  However, it has held that

5

where, as here, a plaintiff seeks compensatory damages, he must demonstrate that

the defendant has intentionally discriminated against the plaintiff. *Powers*, 184 F.3d at

1153. Further, the *Powers* court noted that intentional discrimination can be inferred,

for instance, from a defendant's deliberate indifference to the strong likelihood that

pursuit of its questioned policies will likely result in a violation of federally protected

rights. *Id.* at 1153. Consequently, *Powers* indicates that the Tenth Circuit requires, in

a claim seeking damages, a showing of recklessness-like intent, whether it be

termed "gross misjudgment" or "deliberate indifference."

Johnson argues that the District and its employees acted with gross

misjudgment or deliberate indifference by not informing Lymna, the substitute, of the

"buddy system" requirement of Johnson's IEP and that Lymna, who was also an

employee of the District, acted in the same manner by ordering Johnson to go

downstairs by himself, even though Johnson asked for a buddy and told her that he

had been having seizures recently. His arguments are supported both by the

evidence provided by the District, and the affidavit of Cynthia Andrews.[2] The question

of whether Johnson has adequately demonstrated gross misjudgment or deliberate

---

[2]The District argues that I should disregard Andrews' declaration as opining on a legal conclusion; i.e whether the District acted with gross misjudgment. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003). However, the District does not take issue with the factual allegations in the affidavit. Furthermore, because the gross misjudgment standard cited by the District involves an inquiry into the "accepted standards" of educational professionals, expert testimony on the issue is not objectionable. *See Monahan*, 687 F.2d at 1171.

indifference is close, but in light of the District and its employees' awareness of the

threat of harm to Johnson–particularly since he told Lymna he had been suffering

seizures recently before she ordered him to go downstairs alone–it is one for the jury.

*See, e.g., Gust v. Jones*, 162 F.3d 587, 593 (10th Cir. 1998) (unless one of those "rare

cases where the evidence is susceptible to only one possible inference," "[w]hether

an actor's conduct constitutes negligence is generally a factual question left to a jury");

*Rosen v. LTV Rec. Dev., Inc.*, 569 F.2d 1117, 1123 -1124 (10th Cir. 1978) ("[t]he

question of negligence and contributory negligence are generally, except in the

clearest of cases, jury questions")*; Lester v. Atchison, Topeka & Santa Fe Ry. Co.*,

275 F.2d 42, 44 (10th Cir. 1960) ("[t]he ultimate determination [of the existence of

gross negligence] is one of fact which must be submitted to the jury unless

reasonable minds could reach but a single and apparent conclusion"); *Santiago v.*

*City of Vineland*, 107 F. Supp. 2d 512, 570 (D.N.J. 2000) ("the issue of whether the

actions or inaction of the defendants reached the appropriate level of recklessness or

wilfulness is generally a question for the jury").

Defendant's second argument, that Johnson cannot demonstrate that his fall

was a result of a seizure (and thus, presumably, as a result of Defendant's

discrimination), is more easily rejected.  Although, as the District indicates, Johnson

testified that he did not *know* that he had a seizure when he fell over the railing, he

also testified that he thought he had.  Further, he provides evidence that following his

fall he demonstrated symptoms, such as being combative and not being able to

speak, that are consistent with having had a seizure.  Viewing the evidence in the light

most favorable to Johnson, I conclude that a reasonable jury could find that he

suffered a seizure when he fell over the railing.  *See Bones v. Honeywell Intern., Inc.*

366 F.3d 869, 875 (10th Cir. 2004).

      Accordingly, it is ordered that Defendant's motion for summary judgment, filed

October 25, 2004 (Docket # 42) is denied.

      DATED at Denver, Colorado, on August 19, 2005.

                                     BY THE COURT:

                                     /s/ Walker D. Miller
                                     United States District Judge